**Brookes v. Brookes**
*[Cite as 7 AOA 235]*

*Case No. 88-C-55*
*Columbiana County, (7th)*
*Decided September 17, 1990*

*J. Michael Kapp, 128 West Fifth Street, P.O. Box 768, East Liverpool, Ohio 43920, for Plaintiff-Appellee.*

*Mary Jane Stephens, 1102 Mahoning Bank Building, Youngstown, Ohio 44503, for Defendant-Appellant.*

DONOFRIO, J.

This is an appeal from the Court of Common Pleas of Columbiana County, Ohio, Division of Domestic Relations.

Defendant-appellant, Cynthia Brookes, is a lifelong resident of Spokane, Washington, having been born there in 1952. From 1975 through 1979, she resided variously in Germany and Columbus, Ohio. She and plaintiff-appellee, Timothy R. Brookes, were married in Spokane and resided for a period of some ten months in East Liverpool, Ohio. They then moved to Spokane where they resided for three years. In February 1983, they separated and appellee returned to his home town, East Liverpool, and appellant continued to reside in Spokane.

During an attempted reconciliation, the child of the parties, Laura Rachel, was conceived and subsequently born on January 15, 1985. Since the birth of the child, appellee has visited the child in Spokane in April 1985 and August 1985. In 1986, appellant and the child visited Ohio and appellee was able to visit the child there. Appellee visited the child again in January 1987 in Spokane and again in Ohio in 1987 when appellant and the child were in Ohio. The child was five years old in January 1990.

The trial court, as part of his findings of facts, stated as follows:

"The child's maternal grandparents, the defendant's brother, and, of course, the child's physicians are all located in the Spokane, Washington area. (Affidavit of Defendant, Cynthia S. Brookes, filed September 2, 1988.)

"The plaintiff is a lifelong resident of the City of East Liverpool, Ohio, where his family, including his parents, continue to reside. He has resided in Ohio except for periods of time when he was at school and when he and the defendant lived in Spokane.

"The plaintiff's testimony at the hearing in front of the Referee basically agrees with the status of his exercise of visitation as far as dates, times and places. The paternal grandfather has visited with the child at least once, probably in May or June of 1985. The plaintiff's grandparents (the great grand-parents of the child) are also living in East Liverpool as are some of the aunts of the plaintiff. The plaintiff is remarried, resides in East Liverpool and is an attorney in private practice in East Liverpool. The plaintiff admits that the home state of the child is the state of Washington.

"In April of 1988, the plaintiff contacted the defendant by letter to discuss the formal visitation schedule. He suggested the court's newly adopted standard order for long distance visitation be used as a start in the negotiations. He suggested that he would be happy to listen to any alternative.

"By April 15, 1988, the defendant responded, indicating that she thought the child was still too young to be away from home for an extended length of time and suggested that the plaintiff come out to Washington during the summer to visit the child. The next written response from the defendant was her motion filed in Spokane County, Washington to set visitation rights."

Appellee filed a motion for specific visitation rights in the Columbiana County court of common pleas. On September 6, 1988, the referee held a hearing and then filed his report on September 8, 1988. On September 9, 1988, appellant filed a memorandum opposing the jurisdiction of the Ohio courts. On September 22, 1988, the trial court filed a judgment entry setting forth his reason for retaining jurisdiction and ordered the referee to hold another hearing to set a specific visitation. On October 27, 1988, a hearing on the issue of visitation was held before the referee. The referee recommended the standard order of visitation for long distance travel. On November 14, 1988, the trial court adopted the report of the referee.

Appellant's first and second assignments of error are as follows:

"Assignment of Error No. 1.

"The trial court abused its discretion in assuming jurisdiction in the instant case."

"Assignment of Error No. 2.

"The trial court abused its discretion in failing to find that Ohio was an inconvenient

forum for purposes of a custody determination under Ohio Revised Code 3109.25."

Appellant's first and second assignments of error deal with the allegation of the court abusing its discretion. As to what is meant by abuse of discretion, 5 Ohio Jurisprudence 3d 163, Appellate Review, Section 590, states:

"It is difficult to define exactly what is meant by 'abuse of discretion,' and practically impossible to lay down any general rule as to what it consists of, since it depends upon the facts in each particular case. As the term is ordinarily used, it has been said to imply not merely an error in judgment, but perversity of will, passion, or moral delinquency--that there was an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court."

Appellant cites R.C. 3109.22 which sets forth the standards for a court in determining whether or not to exercise jurisdiction in a custody matter. R.C. 3109.22 states that:

"(A) No court of this state having jurisdiction to determine the custody of a child shall exercise that jurisdiction unless one of the following applies:

"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had beep the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;"

Appellant states that the trial court abused its discretion in applying this statute. Appellant notes that Ohio has never been the home state, since the child was born in the state of Washington and has lived there her entire life. Appellant states that the child has visited her father in the state of Ohio only twice.

In resolving the issue presented herein, we note that of importance is the fact that the dispute do⌐s not involve who shall have custody of the child, but it involves a modification of the visitation rights of appellee that were previously ordered by the trial court. Appellee notes that the trial court communicated with the court in Spokane County prior to his decision to retain jurisdiction. In addition, appellee cites *Hardesty v. Hardesty* (1984), 16 Ohio App. 3d 56, *Sinclair v. Sinclair* (1954), 98 Ohio App. 308, and *Loetz v. Loetz* (1980), 63 Ohio St. 2d 1, for the proposition that it has long been the law in Ohio that the jurisdiction of a divorce-granting court over minors is continuing. Appellee points out that the judgment entry signed by counsel for both parties and dated September 9, 1986, specifically reserved "*** jurisdiction on all matters of support, custody, visitation and medical expenses for the minor child."

Here, the relief sought by appellee is not really a modifi-cation based on changed circumstances (as none of the parties or the child's circumstances have changed since 1986) but, rather an attempt to enforce the former order mandating "reasonable" visitation.

With regard to the Uniform Child Custody Jurisdiction Act (hereinafter "UCCJA"), R.C. 3109.21, et seq., there is nothing in the record to suggest that the trial court ignored the provisions or otherwise abused his discretion in applying the Act. In considering the four enumerated bases for the application of R.C. 3109.22(A), the lower court made a finding that Ohio was not the "home state" of the child as set out in R.C. 3109.22(A) (1). He similarly found, based on evidence taken by affidavit and by testimony, that R.C. 3109.22(A) (3) and (A) (4), regarding abandonment or instances where no other state would have jurisdiction, were not applicable.

While Ohio is admittedly not the "home state," that alone is not determinative of the jurisdictional issue. R.C. 3109.22(C) states:

"Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

The trial court based its retention of jurisdiction on R.C. 3109.22(A) (2), which permits the exercise of jurisdiction if:

"It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;"

The trial court summarized his findings as follows:

"This Court finds from the evidence that Ohio has at least equal family ties as compared

to the state of Washington and there is available in Ohio, substantial evidence concerning the child's care, protection, training or relationship, even though this state is not the home state of the child."

Appellant's arguments with regard to the trial court's refusal to declare itself an inconvenient forum, pursuant to R.C. I 3109.25, is largely subject to the same reasoning previously presented. R.C. 3109.25(A) reads as follows:

"A court that has jurisdiction to make an initial or modification decree *may decline to exercise its jurisdiction any time before making a decree* if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." (Emphasis added.)

This provision is not mandatory and must be considered in conjunction with the other statutes comprising the UCCJA. Additionally, the decree in this case dates back to 1986 when both parties consented to the exercise of jurisdiction.

R.C. 3109.25(D) permits an Ohio court to communicate with a court in another state prior to determining whether to decline or retain jurisdiction. The record indicates that the court of common pleas made this communication and thereafter determined to retain jurisdiction.

For the foregoing reasons, we overrule appellant's first and second assignments of error.

Appellant's third assignment of error states:

"The court erred by an (sic) abusing its discretion in the application of the Parental Kidnapping Prevention Act under 28 U.S.C. Section 1738A."

The trial court, in ifs judgment entry, refers to the Parental Kidnapping Prevention Act (hereinafter "PKPA"), 28 U.S.C. Section 1738A, in support of its decision. The trial court stated that it may exercise jurisdiction to make an order concerning visitation which will be consistent with this federal statute. Appellant argues that the court abused its discretion when it exercised jurisdiction by violating the statutory mandates of this federal statute.

The trial court considered the provisions of the PKPA and discussed his analysis of the Act on pages 8 and 9 of the decision and judgment entry. There, he concluded that the initial and agreed exercise of jurisdiction by the Ohio court in 1986 was consistent with the provisions of the Act and that the Ohio court had continued juris-

diction pursuant to 28 U.S.C. Section 1738A, which reads as follows:

"(d) The *jurisdiction* of a court of a State which has made a child custody determination consistently with the provisions of this section *continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant."* (Emphasis added.)

Section (c) (1) reads:

"(c) A child custody determination made by a court of a State is consistent with the pro-visions of this section only if -

"(1) such court has jurisdiction under the law of such State; and ***."

Based on the initial exercise of jurisdiction by the Ohio court, which is continuing pursuant to Ohio law, and the residence of the appellee, which has remained in Ohio, there is no violation of the PKPA and no abuse of discretion by the trial court.

Many of the citations and authorities provided by appellant refer to the custody determination as such. We find the facts of the instant case are distinguishable from those cited.

Appellant also cites *Luptak v. Luptak* (C.A. 7, 1985), Mahoning County Case No. 84 C.A. 34, unreported, where this court held that, although Ohio has been the state of the original decree, Florida was the home state of the child. Appellant notes that this court found that the fact that one state is the home state is a significant factor in determining which state should have jurisdiction. In *Luptak,* this court found that the trial court did not abuse its discretion in declining jurisdiction in favor of the Florida court. This court found there was no abuse of discretion by the trial court's decision. In such matters before us, the trial court enjoys a wide area of discretion and this appeals court must respect the area of discretion that the trial courts have.

In the case of *Martin v. Martin* (1985), 18 Ohio St. 3d 292, the Ohio Supreme Court stated at page 295:

"While a reviewing court in any domestic relations appeal must be vigilant in ensuring that a lower court's determination is fair, equitable, and in accordance with law, an appellate court must refrain from the temptation of substituting its judgment for that of the trier-of-fact, unless the lower court's decision amounts to an abuse of discretion."

For the foregoing reasons we overrule appellant's third assignment of error and accordingly affirm the judgment of the trial court.

*Judgment affirmed.*

O'NEILL, P.J., and COX, J.,concur.